**Lee PITTMAN, Plaintiff in Error,**

**v.**

**STATE of Oklahoma, Defendant in Error.**

No. A–12084.

Criminal Court of Appeals of Oklahoma.

Jan. 26, 1955.

David Tant, Oklahoma City, Meacham, Meacham, Meacham & Meacham, Clinton, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, Presiding Judge.

Lee Pittman was charged by an information filed in the District Court of Custer County with the murder of one Pat Bradford, was tried, convicted of manslaughter in the second degree and sentenced to serve 4 years in the penitentiary.

On December 5, 1952, defendant shot and killed one Pat Bradford in Stack's Bar in Clinton and at the same time fired four shots into the body of his wife, Inez Pittman, who was sitting at a booth in Stack's Bar with Bradford. He was convicted of assault with intent to kill his wife and sentenced to serve 5 years imprisonment in the penitentiary. On appeal the judgment was affirmed. Pittman v. State, Okl.Cr., 272 P.2d 458. Substantially the same witnesses testified in each trial and for a full statement of the facts surrounding the homicide, reference is made to the above styled case where a complete summary of the evidence was given.

Two assignments of error are presented: First, the trial court erred in allowing defendant's former wife to testify against him concerning events which occurred during the marriage of defendant and his wife. Second, the trial court erred in admitting in evidence the transcript of the testimony of Dixie Upchurch given at the preliminary examination.

■ With reference to the first assignment of error, the record discloses that after the commission of the alleged assault upon his wife and Bradford, Mrs. Pittman obtained a divorce from the defendant. During the trial she was called as a witness and over objections from the defendant's counsel, was permitted to testify to the events which occurred in Stack's Bar at the time of the fatal shooting. The applicable statute provides:

"Except as otherwise provided in this and the following chapter, the rules of evidence in civil cases are applicable also in criminal cases: Provided, However, that neither husband nor wife shall in any case be a witness against the other except in a criminal prosecution for a crime committed one against the other, but they may in all criminal cases be witnesses for each other, and shall be subject to cross-examination as other witnesses, and shall in no event on a criminal trial be permitted to disclose communications made by one to the other except on a trial of an offense committed by one against the other." 22 O.S.1951 § 702.

This court has had occasion to construe the above statute in several cases and it has been uniformly held that it does not prevent one spouse, after the marriage relationship has terminated, from testifying in the prosecution of the other spouse. De-Wolf v. State, Okl.Cr., 245 P.2d 107; Scott v. State, 59 Okl.Cr. 231, 57 P.2d 639; Kaul v. State, 43 Okl.Cr. 56, 277 P. 278. In Scott v. State, supra, this court held:

"In a prosecution for murder, the incompetency of the wife as a witness for the state depends upon the relationship at the time of the trial, and not as to whether she was the wife of the defendant at the time the crime is alleged to have been committed."

The former wife of the defendant was not called to testify to any privileged communication that passed between her and her husband during their marriage relationship, but she testified only to facts surrounding the commission of the alleged homicide in Stack's Bar which were not in the nature of privileged communications between husband and wife.

■ With reference to the second assignment of error, it appears that Dixie Upchurch was not present as a witness in the District Court but she had testified at the preliminary examination at which time counsel for the defendant appeared and cross-examined her. She also had testified as a witness in the District Court trial of

defendant for assaulting his wife. She, with her husband Ray Upchurch, was present in Stack's Bar at the time of the commission of the homicide. Ray Upchurch appeared as a witness and was cross-examined by counsel for the defendant. The testimony of Dixie Upchurch given at the preliminary examination and which was admitted over objection from counsel for defendant was substantially the same as that given by Ray Upchurch. The defendant in his testimony also partially corroborated the testimony of Dixie Upchurch. He testified that the following took place while he was in Stack's Bar:

"* * * as I turned around there this little girl Dixie was coming around the end of the shuffle board. She had done got to the end of it, as I come around I struck her with this hand. (Indicating)

"Q. How? A. Either this way, either with this part or this part. (Indicating) I have a broken hand here and I carry it a lot of times just like that, and as I turned around I hit the little girl with my arm and I just went right on back up.

"Q. You mean she accidently run into the arm, or you accidentally hit her? A. Yes, one way or the other, and I went on up to the bar."

The record to support the admission of the transcript of the evidence of the witness Dixie Upchurch given at the preliminary hearing shows that subsequent to the commission of the homicide and the trial of the defendant, Dixie Upchurch and her husband Ray Upchurch were divorced. Ten days before the case was called for trial the county attorney had a subpoena issued for all of his witnesses in Custer County including Dixie Upchurch. The sheriff testified that he was unable to find the witness; that he inquired of her mother as to her whereabouts and was given an address in Oklahoma City. A subpoena was immediately issued directed to the sheriff of Oklahoma County giving the address of the witness as furnished by the mother. This subpoena was returned by the sheriff of Oklahoma County with a notation that the witness was not at that address and he was unable to find her in Oklahoma County.

In the former appeal, Pittman v. State, supra, the question arose as to the admissibility of evidence given at a preliminary examination by one Edna Weil. The proof relative to the admission of such evidence was substantially the same as that herein presented. Upon appeal the admission of such evidence was sustained and it was there held:

"Where a witness has testified at the preliminary examination against an accused, and has been cross-examined, or the privilege of cross-examination offered, if at a subsequent trial involving the same issue it is satisfactorily made to appear that the witness has died, has become insane, or has permanently left the state, without collusion or procurement, or is sick and unable to attend, or his whereabouts cannot with due diligence be obtained, a transcript of the testimony of such witness may be introduced as his evidence, and the use thereof will not be a violation of the constitutional right of the accused to be confronted with the witnesses against him.

"When the question as to the admissibility of evidence given at a preliminary examination or former trial is presented, the trial court is vested with a discretion in determining the sufficiency of the predicate that is laid for the purpose of introducing such evidence; and his ruling upon such question will be upheld unless this court can say from an examination of the record that the court abused his discretion."

Incidentally, the witness Edna Weil about whom the controversy arose in the former trial was present and testified for the State in the instant case. We think the trial court properly admitted the testimony of Dixie Upchurch taken at the preliminary hearing.

There are no errors of importance appearing in the record. The defendant is.

indeed fortunate that he was not convicted of murder or manslaughter in the first degree as there is very little evidence which would tend to show any justification at all for this unlawful killing. The judgment and sentence of the District Court of Custer County is affirmed.

POWELL and BRETT, JJ., concur.